[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#147)
Presently before the court is the defendant's motion for summary judgment on Counts One, Two and Three of the plaintiffs second amended complaint. Said motion should be denied.
On August 14, 2001, the plaintiff, Profitec, Inc. (Profitec), filed a second amended, three-count complaint sounding in CUTPA, breach of contract and breach of the covenant of good faith and fair dealing, respectively, against the defendants FKI Industries, Inc. (FKI) and the Fosdick Corporation (Fosdick). On December 31, 2001, FKI filed a motion for summary judgment on all three counts, which was argued on April 15, 2002. CT Page 10032
The following facts, as alleged in count one of Profitec's complaint and incorporated by reference in counts two and three, are relevant and necessary background for FKI's motion. FKI leased premises consisting of land and a building with approximately 192,192 square feet of space, (the building), in Wallingford, Connecticut. Fosdick and Profitec leased space in the building from FKI. Under the terms of a sublease entered into by FKI and Profitec in January, 1995, Profitec subleased approximately 15,095 square feet of space in the building. In March of 1996, Profitec and FKI amended the sublease, allowing Profitec to sublease additional square footage of the building, which at the time constituted the remaining vacant portion of the building dedicated to office use and not currently subleased to Fosdick. The space covered by the sublease amendment was subleased at the same annual per square foot rental amount as the sublease, that is, $3.40 per square foot per annum and the termination date was July 14, 2002.
Paragraph twenty-eight of the sublease[1] gave FKI the right to terminate the sublease to Profitec anytime after January 1, 1997, provided Profitec was given no less than sixty days notice of FKI's election to execute its termination right, the notice designated a termination date and as of the termination date "Fosdick and any other subtenants at the building have vacated the building or agreed in writing to vacate, and a new subtenant has agreed to sublease the entire building." In a letter dated October 9, 1998, FKI sent to Profitec a notice of intent to execute its early termination right with an effective termination date of December 9, 1998.[2]
On November 8, 1998, Fosdick notified Profitec that it had entered into an agreement with FKI whereby Fosdick was subleasing the building.[3]
On November 23, 1998, FKI served Profitec with a notice to quit possession of the building on or before December 13, 1998.[4] Profitec refused to vacate the building, informing FKI that it would not do so because the conditions in the early termination provision of the sublease had not been met, as Fosdick was not a `new' subtenant within the meaning of paragraph twenty-eight,[5] and Fosdick had not vacated or agreed in writing to vacate, but instead occupied the building on October 9, 1998, December 9, 1998, and December 13, 1998.
Fosdick informed Profitec that FKI had assigned its rights to terminate the lease to Fosdick and that Fosdick had initiated a summary process action against Profitec in FKI's name.[6] Profitec alleges that in addition to the summary process action, FKI and Fosdick have engaged in conduct to harass Profitec to vacate the building. Specifically, FKI and Fosdick failed to provide heat to Profitec for weeks during cold weather, failed to clear sidewalks of snow and ice and mow the lawn surrounding Profitec's area of the building for weeks, obstructed CT Page 10033 Profitec's parking, moved picnic tables from Fosdick's area to Profitec's area of the building and encouraged Fosdick personnel to play ball several times a day in front of Profitec's portion of the building, which resulted in making the building less desirable to Profitec and its customers. As a result, Profitec leased replacement space at a per square foot rent that is higher than the sublease with FKI.
In count one, Profitec alleges that the conduct described above is a violation of CUTPA, in count two that the conduct constitutes a breach of its lease with FKI, and in count three that the conduct is a violation of the covenant of good faith and fair dealing.
On September 13, 2001, FKI filed an answer to Profitec's second amended complaint, which asserted two special defenses and a counterclaim. FKI's first special defense to counts one through three alleges the following facts. Fosdick's subtenancy terminated on September 30, 1996, and FKI subsequently sublet the Fosdick space to an unrelated third party. When the third party's lease terminated in September, 1998, FKI entered into a sublease with Fosdick for the entire building. Given these circumstances, the early termination provision in the Profitec lease permitted the termination of Profitec's lease. The first special defense further alleges that FKI commenced a good faith eviction action to have the court determine the correct interpretation of the early termination clause of Profitec's lease, and that Profitec's complaint "fails to state a claim on which relief can be granted" because "[a]ny damages allegedly sustained by Profitec were solely the result of Profitec's unilateral actions taken because it was unwilling to await a decision by the Court in the eviction action and were not caused by FKI." FKI's second special defense alleges a failure to mitigate damages.
Although counts one, two and three are asserted against both FKI and Fosdick, only FKI is presently seeking summary judgment. FKI moves for summary judgment on count one on the ground that its institution of a non-sham summary process action cannot be the basis of a CUTPA claim, on count two on the ground that its institution of a non-sham summary process action cannot serve as the basis for a breach of lease or constructive eviction, and on count three on the grounds that there is no evidence that any actions taken by FKI were in bad faith and that FKI is not responsible for the actions taken by its subtenant, Fosdick. In support, FKI attached affidavits and exhibits to its motion, and filed a memorandum of law and a reply memorandum. Profitec filed a memorandum in opposition with affidavits and exhibits, and a surreply that was filed in court on April 15, 2002.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine CT Page 10034 issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Buell Industries, Inc. v. Greater New York Mutual Ins. Co.,259 Conn. 527, 549-50, 791 A.2d 489 (2002). "A material fact is a fact that will make a difference in the result of the case." Rosenfeld v.Rogin, Nassau, Kaplan, Lassman Hirtle, LLC, 69 Conn. App. 151, 157,795 A.2d 572 (2002). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988).
FKI argues that "[a]ll of Profitec's claims against FKI come down to the resolution of two issues: (1) was the summary process action brought in bad faith; and (2) did FKI authorize the alleged harassment?" FKI argues further that "[t]here is a dispute between the parties as to whether FKI properly exercised the Early Termination Provision," but that the court "need not decide this issue" because "FKI is explaining the dispute only for the purpose of establishing, as a matter of law, that the summary process action was not a sham, but was grounded in a good faith argument that the Early Termination Provision applied." FKI argues that while it is disputed as to whether the requirements of the early termination provision were met, there are no material facts in dispute.
 Count One
FKI argues that it initiated the summary process action in good faith, based upon its interpretation of the early termination provision of the sublease. FKI contends that the summary process action therefore was not a sham and cannot support a CUTPA claim. FKI argues that Fosdick's lease expired in 1996 and Fosdick's client then subleased from 1996 to 1998; therefore, Fosdick was no longer a subtenant. FKI contends that Fosdick was a new subtenant when it signed another sublease with FKI in 1998 for the entire building space. In support of its motion for summary judgment, FKI has filed the affidavit of its attorney, Robert Laplaca, to which are attached a number of exhibits. Exhibit C is a copy of the deposition testimony of Profitec's president, Richard Minervino, who admits that the early termination provision was included in Profitec's sublease so that FKI could sublease the entire building to another tenant if that tenant needed both office and warehouse space, rather than leave CT Page 10035 the warehouse space unrented, and that Profitec agreed to vacate in such event. Exhibit G is the deposition testimony of Robert Miller, FKI's vice president, which states that FKI "wanted flexibility in that building, so that whoever needed the warehouse and office, [FKI] would not be blocked from getting the building leased. . . ."
In opposition, Profitec argues that FKI misrepresented that there was a new subtenant who wanted to sublease the entire building. Profitec argues further that FKI knew that it had no right to terminate the sublease and protected itself through an indemnification clause in the sublease to Fosdick for the entire building. In support of its opposition to FKI's motion, Profitec has filed the affidavits of its president, Richard Minervino and its attorney, Stephen Pincus. Attached to Pincus's affidavit as Exhibit 7, which he attests is a true copy, is a copy of the sublease between FKI and Fosdick, which states in paragraph twenty-nine that FKI is indemnified by Fosdick for "any and all loss, cost, damage, expense or liability" arising from or incurred by the institution of the summary process action against Profitec. Exhibit 8 attached to Pincus's affidavit is a December 8, 1998 letter from Profitec to FKI, stating that Profitec "never contemplated nor agreed that Fosdick nor any other existing subtenant could force Profitec to vacate the [b]uilding. . . ." Exhibit D attached to Minervino's affidavit is a November 18, 1998 letter from Fosdick to Profitec, informing Profitec that FKI assigned Fosdick the right to initiate a summary process action; Exhibit E is a copy of the notice to quit possession from FKI to Profitec, dated November 23, 1998.
"[A] sham lawsuit is one instituted by a plaintiff in bad faith."Gilbert v. Beaver Dam Assn. of Stratford, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 00 374905 (July 24, 2001, Rush, J). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." Habetz v. Condon, 224 Conn. 231, 237,618 A.2d 501 (1992). "Neglect or refusal to fulfill a contractual obligation can be bad faith only if prompted by an interested or sinister motive." Feinberg v. Berglewicz, 32 Conn. App. 857, 862, 632 A.2d 709
(1993).
Determining whether FKI acted in bad faith would require this court to determine FKI's intentions and motivations regarding the termination of the sublease and authorization of Fosdick to initiate the summary process action. "Intent is a question of fact." Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 276, 709 A.2d 558 (1998). "[S]ummary judgment procedure is particularly inappropriate where the inferences which the CT Page 10036 parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." Suarez v. Dickmont Plastics Corp.,229 Conn. 99, 111, 639 A.2d 507 (1994). Accordingly, summary judgment is not warranted as to count one because a genuine issue of material fact exists as to whether FKI acted in bad faith. Contrary to FKI's argument, while this issue remains in dispute, FKI cannot establish as a matter of law that the summary process action was not a sham and that it is entitled to summary judgment on the plaintiffs CUTPA claim.
 Count Two
FKI next argues that summary judgment should be granted in its favor on Profitec's breach of contract claim in count two on the grounds that "the institution of a summary process action cannot serve as a basis for breach of lease and . . . the undisputed facts concerning the `harassment' do not constitute a breach of lease or constructive eviction." FKI argues that it had good faith grounds for bringing the summary process action based upon the early termination provision of the sublease. FKI further argues that it acted in accordance with the early termination provision when it gave Profitec both notice that it was invoking the provision and notice to quit possession of the building, because it believed Fosdick was a new tenant when Fosdick offered to sublease the building in October 1998. FKI argues that "[t]here is no support for Profitec's claim that [Fosdick's client] was really a front for Fosdick because Fosdick's employees and equipment remained at the warehouse while it was sublet to the client." FKI bolsters its arguments with the submission of deposition testimony and other documents, not unlike the submissions relative to count one, all supporting its contention that Fosdick was a new tenant.
Profitec's chief argument in opposition, which is also supported by additional deposition testimony and other documentation, is that because Fosdick never vacated the building when its lease expired, continued to pay rent on the building and the utility bills, managed the day-to-day operations in the warehouse space, continued to arrange the maintenance contracts for the building and maintained a sign depicting its name on the front of the building, it remained a subtenant. Profitec contends that because Fosdick was not a new subtenant, FKI did not have the right to terminate the Profitec sublease.
In support of its motion for summary judgment, FKI characterizes Profitec's breach of contract claim as one sounding in a breach of the covenant of quiet enjoyment. "`[T]he mere commencement of legal proceedings against the lessee relating to his title or right to possession is not sufficient to constitute a breach of the covenant [of quiet enjoyment] unless the suit was instituted maliciously and without CT Page 10037 probable cause.'" Elxsi v. Niantic Hospitality, LLC, Superior Court, judicial district of New London, Docket No. CV 97 0112370 (January 10, 2000, Parker, J.), quoting 51C C.J.S., Landlord Tenant § 323(3) b (1968).
The facts surrounding the summary process action, and therefore whether FKI had probable cause to bring it, are in dispute. While the mere commencement of a summary process action is not grounds for a breach of lease claim, in the present case there exist questions of material fact as to whether the summary process action was brought in good faith. "Whether or not the defendants acted reasonably or in good faith is a strongly contested genuine issue of material fact." United Oil Co. v.Urban Redevelopment Commission, 158 Conn. 364, 381, 260 A.2d 596 (1969). Accordingly, the motion for summary judgment as to count two should be denied.
 Count Three
FKI next argues that summary judgment should be granted on the third count, alleging breach of the implied covenant of good faith and fair dealing, on the ground that "there is no evidence that any actions taken by FKI were in bad faith, and FKI is not legally responsible for any actions taken by its subtenant Fosdick." FKI argues further that it did not authorize Fosdick's actions aside from the legal summary process action and that Profitec has not produced any documents that show any harassing conduct. In support, FKI submits its requests to Profitec for documents that show communications between Profitec and FKI, documents concerning Profitec's claim of harassing conduct, communications between Profitec and FKI concerning the cost and reimbursement of costs for leasehold improvements made by Profitec. (Exhibit A, Laplaca affidavit.) FKI also submits Profitec's responses, which state that "[d]ocuments responsive to this request will be produced." (Exhibit B, Laplaca affidavit.)
In opposition, Profitec argues that since FKI authorized Fosdick to bring a summary process action against Profitec, Fosdick was acting as FKI's agent, and any acts done by Fosdick were imputed to FKI, its principal. In support, Profitec provides deposition testimony of FKI's president, Pappas, who states that Fosdick engaged in harassing conduct toward Profitec. (Exhibit 4, Pincus affidavit.) Profitec also submits deposition testimony of FKI's former president, Theodore Konstantino, who states that Fosdick engaged in the conduct as "payback" for Profitec's refusal to vacate. (Exhibit I, Laplaca affidavit.) Profitec further submits copies of the 1998 sublease between Fosdick and FKI, which includes a provision that authorizes Fosdick to bring a summary process action against Profitec. (Exhibit 7, Pincus affidavit.) CT Page 10038
"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. . . . Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified." Elm Street Builders,Inc. v. Enterprise Park Condominium Assn., Inc., 63 Conn. App. 657, 667,778 A.2d 237 (2001). "[Good faith] is a subjective standard of honesty of fact in the conduct or transaction concerned, taking into account the person's state of mind, actual knowledge and motives. . . . Whether good faith exists is a question of fact to be determined from all the circumstances. . . . [T]he party opposing summary judgment must [however] present a factual predicate for his argument in order to raise a genuine issue of material fact, even with respect to motive, intent or good faith." Jaser v. Fischer, 65 Conn. App. 349, 359-60, 783 A.2d 28 (2001).
In addition, our Supreme Court has held that "agency is normally a question of fact." Hallas v. Boehmke Dobosz, Inc., 239 Conn. 658, 674,686 A.2d 491 (1997). Here, Profitec has provided a factual basis on which a genuine issue of material fact is raised as to whether Fosdick was acting as an agent of FKI and whether, as in counts two and three, FKI acted in good faith. Because these genuine issues of material fact exist, FKI's motion for summary judgment on count three should be denied.
Accordingly, FKI's motion for summary judgment as to counts one, two and three of Profitec's second amended complaint is denied.
Ronald J. Fracasse, Judge